UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH OSBORNE, | |
|     Plaintiff, | Case No. C15-0223RSL |
| v. | ORDER GRANTING DEFENDANT'S SECOND MOTION TO DISMISS |
| THE BOEING COMPANY, | |
|     Defendant. | |

This matter comes before the Court on "The Boeing Company's Motion to Dismiss Pursuant to Rule 12(b)(6)." Dkt. # 19. Plaintiff, an African American woman, has asserted claims of hostile work environment, disparate treatment, and retaliation under the Washington Law Against Discrimination ("WLAD"), RCW Ch. 49.60. Having reviewed the memoranda[1] submitted by the parties, the Court finds as follows:

---

[1] Plaintiff's response (Dkt. # 20) appears to have been generated using speech recognition software or to be in draft form. There are multiple instances where words are missing or misspelled, similar-sounding words are confused, and/or quotations are misstated. These instances are, at best, distracting and show a lack of care (for example, "noticed pleading" instead of "notice pleading" and "Judge Brian" instead of "Judge Bryan"). At worst, they are detrimental to counsel's efforts to convey meaning (for example, "voracity" instead of "veracity" and an indecipherable reference to "while advisory retaliated" at the end of the block quotation on page 8). The Court assumes that this memorandum is not up to counsel's normal standards and that he would prefer to have a more representative product memorialized in the record. Plaintiff's counsel may, therefore, file an amended "Response to Boeing's Second Motion to Dismiss Purusant [sic] to Rule 12(b)(6)" within seven days of the date of this Order, in which case the original, error-laden document will be sealed from public view.

ORDER GRANTING DEFENDANT'S
SECOND MOTION TO DISMISS – 1

## BACKGROUND

In 2012, plaintiff complained that her supervisor, Eric Slagle, was sexually harassing a fellow employee. Plaintiff alleges that Mr. Slagle began micro-managing her performance and gave her an unwarranted adverse evaluation in retaliation for her complaint. Plaintiff contested the evaluation in March 2013 and, in that context, repeated her sexual harassment accusations against Mr. Slagle. Mr. Slagle was promoted and did not supervise plaintiff after June 2013.

Boeing investigated plaintiff's complaints regarding her performance evaluation and Mr. Slagle's conduct, but found the accusations unsubstantiated. Plaintiff alleges that the investigator failed to comply with Boeing procedures. She contacted the investigator's supervisor and other executives in her efforts to correct the perceived inadequacies. In January 2014, plaintiff filed an appeal of her adverse performance evaluation and subsequently sought additional meetings with and support from upper-level management (including the General Manager of her organization). In May 2014, the vice president of human resources, Alan May, again found that plaintiff's complaints were unsubstantiated. Plaintiff deemed this finding a "failure to act" since Mr. May "never expressed why Plaintiff's concerns were not properly addressed, nor did he assist in making relationships on communications any better." Dkt. # 18 at ¶ 5.35. She continued to seek a more "substantial response" to her claim that she was given a poor performance review because she accused Mr. Slagle of sexually harassing a co-worker. She also attempted to bring her complaints to the attention of ever-more-senior executives within Boeing. Dkt. # 18 at ¶¶ 5.36-5.37. On June 10, 2014, Boeing issued a corrective action memorandum ("CAM") for plaintiff's failure "to comply with management direction to cease contact with company executives regarding issues which have been appropriately addressed." Dkt. # 19 at ¶ 5.37.

Meanwhile, an issue arose between plaintiff and her new supervisor, Alan Applegate, regarding proprietary information plaintiff sent to a Boeing supplier. Plaintiff maintains that Mr. Applegate authorized the transmission, and an investigation was initiated in June 2014. Plaintiff was thereafter excluded from meetings with or about the supplier, but the Caucasian male

ORDER GRANTING DEFENDANT'S
SECOND MOTION TO DISMISS – 2

finance analyst who created the document at issue was allowed to participate. On August 21, 2014, a second CAM was issued for sending proprietary information in an unencrypted format to the supplier, and plaintiff was suspended without pay for five days. Plaintiff alleges that her "Caucasian counterparts are not interrogated or suspended for these types of activities" and provides two examples. Dkt. # 18 at ¶ 5.45.2.

Plaintiff alleges that Mr. Applegate exhibited "racial disrespect," "had a different communication style with Caucasians," "tasked plaintiff with actions that he did not task her Caucasian counterparts with," and requested that human resources participate in a year-end meeting with plaintiff but not with Caucasian procurement agents. Dkt. # 18 at ¶¶ 5.56-5.56.1 and 5.57. She surmises "that management had informed [Mr. Applegate] of the outstanding issues Plaintiff had with Eric Slagle." Dkt. # 18 at ¶ 5.56.

## DISCUSSION

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d

ORDER GRANTING DEFENDANT'S
SECOND MOTION TO DISMISS – 3

1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

**A. Hostile Work Environment**

To establish a prima facie hostile work environment claim, plaintiff must show that (1) she was subjected to verbal or physical conduct of a sexual or racial nature, (2) the harassment was unwelcome, (3) the harassment was sufficiently severe or pervasive to have affected the terms and conditions of plaintiff's employment, and (4) the harassment was imputable to the employer. Ellorin v. Applied Finishing, Inc., 996 F. Supp. 2d 1070, 1080–81 (W.D. Wash. 2014); Antonius v. King Cnty., 153 Wn.2d 256, 261 (2004). Plaintiff has failed to allege any conduct or statements that touched on her race or gender. The only reasonable inference from the complaint is that, if her working conditions were hostile, it was not because she is African American or a woman, but rather because she alleged that Mr. Slagle was sexually harassing a co-worker. While those circumstances may give rise to a valid retaliation claim, plaintiff has failed to establish the first element of a prima facie claim for hostile work environment. See Hua v. Boeing Corp., No. C0-0010RSL, 2009 WL 1044587, at *4 (W.D. Wash. Apr. 17, 2009) (dismissing hostile work environment claim because plaintiff "ha[d] not alleged any comment or action that [was] related to, or even touched on, his race or national origin").

**B. Disparate Treatment**

Plaintiff has no direct evidence of discriminatory intent and must therefore satisfy the burden shifting standard set forth in McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973). See Gamble v. Pac. Nw. Reg'l Council of Carpenters, 2:14-CV-00455RSM, 2015 WL 402782, at *2 (W.D. Wash. Jan. 29, 2015); Alonso v. Qwest Commc'ns Co., 178 Wn. App. 734, 743–44 (2013). In order to raise a prima facie case of discrimination, plaintiff must allege that: (1) she is a member of a protected group, (2) she was qualified for her position, (3) she suffered an adverse

ORDER GRANTING DEFENDANT'S
SECOND MOTION TO DISMISS – 4

employment action, and (4) other similarly situated employees were treated more favorably, or that discrimination can otherwise be inferred from the circumstances. Gamble, 2015 WL 402782, at *2. Plaintiff alleges that she is an African American woman and that she was subjected to an adverse performance review and two CAMs.[2] Plaintiff has not, however, shown that similarly situated employees who are not members of the protected groups were treated more favorably.

With regards to the performance evaluation and the June 2014 CAM, plaintiff does not identify any comparators or explain how they were treated more favorably in similar circumstances. As to the August 2014 CAM, plaintiff provides two examples of "Caucasian counterparts" who were "not interrogated or suspended for these types of activities. Dkt. # 18 at ¶ 5.45.2. Neither comparator sent unencrypted propriety information to a third party without having a "Proprietary Information Agreement" in place, however. Nor is there any indication that they were supervised by Mr. Applegate or that the "management team" plaintiff called together to "discuss the issue" was aware of these other transgressions. Dkt. # 18 at ¶ 5.41. Plaintiff's allegations are insufficient to raise an inference that she was adversely evaluated or disciplined because of her race or gender. McDonnel Douglas, 411 U.S. at 802. Her disparate treatment claims must be dismissed.

## C. Retaliation

The Court has already determined that plaintiff's allegations raise an inference of unlawful retaliation regarding the March 2013 performance evaluation: plaintiff complained that her supervisor was sexually harassing a co-worker and, at the next opportunity, he gave her an

---

[2] The Court assumes without deciding that the issuance of adverse performance evaluations and CAMs are acts "that affect employment or alter the conditions of the workplace" and therefore constitute "adverse employment actions" for purposes of a disparate treatment claim. Burlington N. and Sante Fe Ry. Co. v. White, 548 U.S. 53, 62 (2006). Other acts of which plaintiff complains, such as the tone in which Mr. Applegate addresses plaintiff or the decision to have plaintiff's manager, rather than plaintiff, make a presentation, do not affect the terms and conditions of employment.

ORDER GRANTING DEFENDANT'S
SECOND MOTION TO DISMISS – 5

evaluation that was significantly worse than her previous evaluations. Dkt. # 17 at 11-12. Plaintiff has failed to allege facts – as opposed to speculation and conclusory statements – in support of her other retaliation claims, however. Plaintiff does not dispute that she continued to contact upper-level executives regarding her appeal even after being instructed to stop or that she sent unencrypted proprietary information to a supplier. The facts alleged do not support plaintiff's assumption that the CAMs were a form of retaliation for a complaint made against a former supervisor two years earlier. There is no indication that Mr. Slagle played a role in the issuance of the CAMs, that the decisionmakers were at all concerned that plaintiff had filed a complaint against Mr. Slagle, or even that anyone had expressed hostility toward whistleblowers in general. Plaintiff asserts that both CAMs were unjustified, but her intervening conduct is undisputed. Plaintiff cannot rely solely on the circular argument that the CAMs were retaliatory and therefore undeserved to support her claim of retaliation. The lack of any facts from which one could infer a connection between Mr. Slagle and decisions that were made two years later by different decisionmakers invalidates the speculative claim of retaliation with regards to the CAMs.

## CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss (Dkt. #19) is GRANTED. All of plaintiff's claims except the retaliation claim related to her negative performance review in March 2013 are DISMISSED. Because this was plaintiff's third attempt to plead viable causes of action, a fourth opportunity to amend is not warranted.

Dated this 20th day of July, 2015.

Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S
SECOND MOTION TO DISMISS – 6