UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH OSBORNE, | |
| Plaintiff, | NO. C15-223RSL |
| v. | |
| THE BOEING COMPANY, an Illinois Corporation licensed to do business in the State of Washington | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| Defendant. | |

## I. Introduction

This matter comes before the Court on "Defendant's Motion For Summary Judgment" (Dkt. # 32), "Plaintiff's Cross Motion For Revision" (Dkt. # 40), and "Defendant's Motion to Strike" (Dkt. # 41). Ms. Osborne argues that Boeing retaliated against her in violation of the Washington Law Against Discrimination ("WLAD") because her former supervisor, Mr. Slagle, gave her poor performance evaluations after she complained that Mr. Slagle was having an affair with a subordinate female employee. Boeing argues that plaintiff's complaints were not statutorily protected activity for purposes of a WLAD retaliation claim. In the alternative, Boeing argues that even if Ms. Osborne's complaints constituted statutorily protected activity, Mr. Slagle's actions were not retaliatory because the performance evaluations at issue were completed before Ms. Osborne knew of or complained about Mr. Slagle's alleged affair.

The Court has reviewed the parties' submissions. Viewing the record in a light most favorable to plaintiff, the Court finds that she has not established a prima facie case of

ORDER - 1

retaliation. For the reasons discussed below, the Court grants defendant's motion for summary judgment, grants in part defendant's motion to strike, and denies plaintiff's motion for revision.

## II. Background

Ms. Osborne is an African American woman who has worked for Boeing since August 22, 1980. Dkt. # 38 (Osborne Decl.) at 1. She is employed as a "Procurement Agent 4" within the Boeing Commercial Airlines ("BCA") Supplier Management Organization. As a Procurement Agent 4, Ms. Osborne manages and oversees a number of Boeing's contracts with outside suppliers. Plaintiff worked under the supervision of Eric Slagle from April 2011 through June 2013. Id. She is currently on a medical leave of absence.

As Ms. Osborne's manager, Mr. Slagle was responsible for completing plaintiff's performance evaluations in 2012. Boeing provides its non-unionized employees with Performance Management Reviews ("PMs") twice a year. Dkt. # 35 (Slagle Decl.) at 2. Mid-year reviews typically occur in July and year-end reviews typically occur in December. Id. After an employee's year-end PM ratings are uploaded within Boeing's database, managers input a proposed Individualized Performance Assessment ("IPA") rating. IPA ratings are reviewed by higher level managers between January and March and are not given to employees until that process is complete. See Id. at 2-5.

In 2011, Ms. Osborne was satisfied with the feedback she received on her performance evaluations. During her 2011 year-end performance review, Mr. Slagle wrote that "Deborah has impressed me in the limited amount of time we've worked together this year. Her performance negotiating the SGPP contract was exemplary . . ." Dkt. # 38-1 (Osborne Decl.), Ex. 6 at 86. Her IPA rating in 2011 was "highly effective." Dkt. # 38 at 2. Despite such positive feedback, Ms. Osborne and Mr. Slagle's relationship soured.

During her mid-year review on July 30, 2012, Mr. Slagle stated that "Deborah has done a good job moving the Kaman contract along while at the same time staying on top of her other contracts." Dkt. # 38 (Osborne Decl.) at 2. But Mr. Slagle also noted that Ms. Osborne's productivity was lagging and that she had completed less contracting activities than the other

ORDER - 2

members on her team. Id. at 3. During plaintiff's 2012 year-end review, Mr. Slagle stated that Ms. Osborne had been less productive than her peers, and therefore, assigned PM scores of "Met Expectations" in the Performance Values category and "Met Some Expectations" in the Business Goals and Expectations category. Dkt. # 35 (Slagle Decl.) at 3. On December 21, 2012, Mr. Slagle inputted Ms. Osborne's 2012 IPA rating of "Moderately Effective" into the Boeing system. Id. at 4. Ms. Osborne did not receive her IPA rating until March 2013. Id. at 5; see also Dkt. # 38 (Osborne Decl.) at 9.

Plaintiff visited Boeing's human resources department in January 2013 to dispute her PM rating (at that point in time, she had not received her IPA rating). Ms. Osborne's 2012 year-end scores were lower than the ratings she had received in the prior year. She argued that her PM ratings were not an accurate reflection of her work performance and that her workload was too heavy. Dkt. # 37 (Williams Decl.) at 1. No mention of discrimination or retaliation was made.

Mr. Slagle provided Ms. Osborne with her IPA rating on March 15, 2013. Dkt. # 35 (Slagle Decl.) at 5. Plaintiff challenged that rating by filing a complaint with Boeing's Alternative Dispute Resolution department. She argued that her workload responsibilities were more complex than those of her peers, that she felt disrespected and unsupported, and that Mr. Slagle showed partiality in the workplace.

Shortly thereafter, Ms. Osborne learned of an alleged romantic relationship between Mr. Slagle and a female subordinate employee. Romantic relationships between Boeing managers and subordinate employees are prohibited. Dkt. # 34 (Bitonti Decl.) at 2. Nonetheless, one of Ms. Osborne's co-workers informed her that she was romantically involved with Mr. Slagle. Dkt. # 34-1 (Bitoni Decl.), Ex. C. at 1; Dkt. # 38-3 (Osborne Decl.), Ex. 23 at 147. Although the exact date of the conversation is uncertain, Ms. Osborne stated that she believed the conversation took place in April 2013. Dkt. # 38-3 (Osborne Decl.), Ex. 23 at 147. Over the course of the next few weeks, the female employee continued to tell Ms. Osborne about the affair. Id. Ms. Osborne eventually reported the relationship to her supervisors.

On September 13, 2013, Ms. Osborne abandoned her Boeing ADR complaint and filed an

ORDER - 3

1  Equal Employment Opportunity (EEO) complaint, alleging that Mr. Slagle discriminated against

2  her based on her ethnicity as an African American female and gave her poor performance ratings

3  in retaliation for complaints she had made about him. Dkt. # 33-1 (Luschei Decl.), Ex. B at 5.

4  Boeing's EEO department found that her claims were unsubstantiated. Ms. Osborne disputes that

5  finding. She believes her 2012 PM ratings and corresponding IPA rating do not adequately

6  reflect her work performance and that Mr. Slagle retaliated against her when he issued those

7  ratings. See Dkt. # 38 (Osborne Decl.) at 2.[1]

8                                            **III. Analysis**

9           Summary judgment is appropriate when, viewing the facts in the light most favorable to

10  the nonmoving party, there is no genuine issue of material fact that would preclude the entry of

11  judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial

12  responsibility of informing the district court of the basis for its motion," Celotex Corp. v. Catrett,

13  477 U.S. 317, 323 (1986), and "citing to particular parts of materials in the record" that show the

14  absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c). Once the moving party has

15  satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate

16  "'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324.

17  The Court will "view the evidence in the light most favorable to the nonmoving party . . . and

18  draw all reasonable inferences in that party's favor." Krechman v. Cnty of Riverside, 723 F.3d

19  1104, 1109 (9th Cir. 2013) (internal quotations omitted). Although the Court must reserve for

20  the jury genuine issues regarding credibility, the weight of the evidence, and legitimate

21  inferences, the "mere existence of a scintilla of evidence in support of the [non-moving party's]

22  position will be insufficient" to avoid judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

23  252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are

24

25           [1] The Court previously dismissed plaintiff's disparate treatment, hostile work environment, and
26  harassment claims. Dkt. # 17; Dkt. # 22. The only claim that survived is a retaliation claim related to her
    negative performance review in March 2013. To the extent plaintiff has raised arguments and presented
27  evidence regarding claims that are no longer in the case, they have not been considered by the Court.

28  ORDER - 4

1  irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina,

2  762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where

3  the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict

4  in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

5  **A. Retaliation Claim**

6        Under the WLAD, a prima facie case of retaliation is established when an employee "(1)

7  engage[s] in statutorily protected activity; (2) the employer [takes] some adverse employment

8  action against the employee;[2] and (3) there is a causal link between the protected activity and the

9  adverse action." Crownover v. State ex rel. Dept. of Transp., 165 Wn. App. 131, 148 (2011). If

10  an employee makes a prima facie case, the burden then shifts, and the employer must show a

11  non-discriminatory reason for the adverse employment action. Id. If the employer meets its

12  burden, the employee then has to show that the employer's reasons are mere pretext. Id. When

13  "'the record contains *reasonable but competing* inferences of *both* discrimination *and*

14  nondiscrimination, it is the jury's task to choose between such inferences.'" Boyd v. State,

15  Dep't. Of Soc. & Health Servs., 187 Wn. App. 1, 12 (2015) (quoting Estevez v. Faculty Club of

16  Univ. of Wash., 129 Wn. App. 774, 798 (2005) (other quotations omitted)). A plaintiff does not

17  have to prove that retaliation was the only cause of an employers adverse employment action,

18  but the plaintiff "must establish that it was at least a substantial factor." Sambasivan v. Kadlec

19  Med. Ctr., 184 Wn. App. 567, 590 (2014) (citing Allison v. Hous. Auth. of City of Seattle, 118

20  Wn.2d 79, 85-96 (1991)). The Court assumes, without deciding, that plaintiff's March IPA

21

22       [2] An adverse employment action is "a tangible change in employment status, such as 'hiring,

23  firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing
a significant change in benefits.'" Crownover v. State. ex. rel. Dept. of Transp., 165 Wn. App. 131, 148

24  (2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). For an action to be
deemed an adverse employment action, a change in employment conditions must occur and such

25  changes must constitute more than a mere inconvenience. Boyd, 187 Wn. App. at 13 (citing Alonso v.

26  Quest Commc'ns Co., LLC, 178 Wn. App. 734, 746 (2013)). Determining whether an act is an adverse
employment action involves an inquiry into the specific facts of a case. Id. (noting that an act may be

27  material in some circumstances but not others).

28  ORDER - 5

1   rating was an adverse employment action for purposes of plaintiff's prima facie case because

2   both parties treat it as such in their pleadings.

3   ***Statutorily Protected Activity***

4          A plaintiff "engages in WLAD-protected activity when [s]he opposes employment

5   practices forbidden by antidiscrimination law or other practices that [s]he reasonably believed to

6   be discriminatory." Alonso v. Quest Commc'ns Co., LLC, 178 Wn. App. 734, 754 (2013). In

7   other words, Ms. Osborne "need only prove that her complaints went to conduct that was at least

8   arguably a violation of the law, not that her opposition activity was to behavior that would

9   actually violate the law against discrimination." Estevez, 129 Wn. App. at 798; see also Currier

10  v. Northland Servs., Inc., 182 Wn. App. 733, 746, review denied, 182 Wn.2d 1006 (2015)

11  (stating that "Washington cases have likewise held that a plaintiff need not prove the conduct

12  opposed was in fact discriminatory but need show only that he or she reasonably believed it was

13  discriminatory."). The Court determines whether a plaintiff's complaint was based on a

14  reasonable belief that discrimination occurred by "balanc[ing] the setting in which the activity

15  arose and the interests and motives of the employer and employee." Kahn v. Salerno, 90 Wn.

16  App. 110, 130 (1998) (internal quotations omitted).

17         Although plaintiff only needs to show that Mr. Slagle's conduct arguably violated the

18  law, "[a] general complaint about an employer's unfair conduct does not rise to the level of

19  protected activity in a discrimination action under the WLAD absent some reference to the

20  plaintiff's protected status." Alonso, 178 Wn. App. at 754. In Alonso, the plaintiff alleged that

21  his supervisor and other individuals "collectively treated [him] poorly and tormented him

22  because of his miliary status, Mexican heritage, and disabilities, including his speech

23  impediment." Id. at 740. He also complained that those individuals used offensive language and

24  that his supervisor held his post traumatic stress disorder against him. Id. He called his

25  employer's hotline to report "corruption, mistreatment, and vulgar language." Id. at 754. The

26  court found that "[b]ecause Alonso did not phone the hotline to report discrimination against him

27  based on any protected status, he did not establish a prima facie case under the WLAD . . ." Id.;

28  ORDER - 6

1  see also Graves v. Dep't of Game, 76 Wn. App. 705, 712 (1994) (holding that the plaintiff did

2  not engage in statutorily protected activity when she complained that a supervisor "was not

3  spending enough time with her, was not training her sufficiently, and was expecting too much of

4  her" because such "complaints were not of sexual discrimination.").

5      Here, plaintiff has not provided any evidence that she participated in statutorily protected

6  activity. At the start of this litigation, Ms. Osborne plausibly alleged that she had complained

7  because Mr. Slagle was sexually harassing a co-worker. There is, however, no evidence in the

8  record of harassment (defined in Washington as unwelcome, undesirable, or offensive conduct

9  (see Glasgow v. Georgia-Pacific Corp., 103 Wn.2d 401, 406 (1985)) aimed at the co-worker.

10 Nor is there evidence that would support a reasonable belief in plaintiff that the relationship

11 constituted harassment. Although "Washington cases have . . . held that a plaintiff need not

12 prove the conduct opposed was in fact discriminatory but need show only that he or she

13 reasonably believed it was discriminatory," (Currier, 182 Wn. App. at 746) Ms. Osborne points

14 to nothing but a consensual relationship and confuses a violation of Boeing's policies prohibiting

15 such romances with a violation of the law. Because the acts of which she complained are not

16 forbidden by Washington's anti-discrimination statute and could not reasonably be deemed to be

17 sexual harassment, any complaint regarding Mr. Slagle's "prohibited romantic relationship"

18 (Dkt. # 38 (Osborne Decl.) at 2) was not statutorily protected activity. Alonso, 178 Wn. App. at

19 754; see also Reiber v. City of Pullman, 2013 WL 3984442, at *11 (E.D. Wash. Aug. 1, 2013)

20 (stating that no reasonable jury could find that plaintiff, a firefighter, reasonably believed that

21 objecting to a consensual relationship within his department constituted protected activity when

22 he complained "about the alleged affair because he felt that [the relationship] was

23 'inappropriate,' because it violated Pullman Fire Department policy, and because it was making

24 other firefighters feel 'uncomfortable.'").

25     Ms. Osborne has pursued her retaliation claim on the theory that she was treated less

26 favorably than an individual with whom Mr. Slagle was in a romantic relationship. Even if true,

27 such preferential treatment was afforded to a particular individual and does not amount to

28 ORDER - 7

1   discrimination against any protected group. Clark v. Cache Valley Elec. Co., 573 Fed. Appx.

2   693, 697 (10th Cir. 2014); Schobert v. Ill. Dep't of Transp., 304 F.3d 725, 733 (7th Cir. 2002);

3   Krasner v. HSH Nordbank AG, 680 F. Supp.2d 502, 517-18 (S.D.N.Y. 2010); Keenan v. Allan,

4   889 F. Supp. 1320, 1375 n.66 (E.D. Wash. 1995).[3] Moreover, in Reiber, the court stated that

5   "reporting a suspected affair between co-workers is not protected activity. . . . [T]he [WLAD]

6   prohibits *discrimination* on the basis of . . . protected characteristics. RCW 49.60.010. A

7   consensual sexual relationship between two co-workers (whether extramarital or otherwise) does

8   not involve *any* form of discrimination, much less discrimination on the basis of a protected

9   characteristic."  2013 WL 3984442, at *10. This Court agrees with that analysis. Merely labeling

10  favoritism in the workplace as "disparate treatment" does not establish that the special treatment

11  is based on an impermissible classification. Showing favoritism towards a spouse, protégé, old

12  friend, or romantic interest does not constitute favoritism towards (or against) a protected class.

13  And merely complaining about the effects of a romantic relationship on workplace dynamics

14  does not constitute protected activity. Because plaintiff has not established that her complaints

15  amounted to statutorily protected activity, she has failed to establish her prima facie case.

16  *Causal Link*

17          Assuming, for purposes of this analysis, that plaintiff did engage in statutorily protected

18  activity and suffered an adverse employment action, she has not provided evidence from which a

19  reasonable jury could conclude that there is a causal link between plaintiff's complaints

20  regarding Mr. Slagle's relationship and her 2012 year-end review and IPA evaluation. Plaintiff

21  previously acknowledged, and the documentary evidence shows, that she first learned of and

22  reported the alleged affair in April or May of 2013. Prior to that time, plaintiff's complaints

23  focused on Mr. Slagle's alleged failure to accurately characterize plaintiff's workload and

24  evaluate her performance: a January 2013 investigation concluded that there was no violation of

25

26          [3] To the extent that Ms. Osborne complained that Mr. Slagle treated her differently on account of
    race, those allegations are irrelevant. The Court previously dismissed all claims based on plaintiff's

27  gender or race. Dkt. # 22 at 5.

28  ORDER - 8

1   company policy and "that Ms. Osborne's concerns amounted to a simple disagreement with her

2   manager." Dkt. # 37 (Williams Decl.) at 1-2. The performance review was completed in this

3   timeframe, months before plaintiff learned of and complained about Mr. Slagle's relationship

4   with a co-worker. The facts do not give rise to a reasonable inference of causation.

5        In her declaration, Ms. Osborne states that "she was retaliated against once [she] began

6   complaining in 2012 of Slagle's disparate treatment" and that "[d]uring 2012, [she] reported

7   [her] manager[] Eric Slagle's harassment and disparate treatment conduct to Management,

8   Human Resources and Ethics multiple times." Dkt. # 38 (Osborne Decl) at 2. These statements

9   are vague and wholly conclusory. Despite possessing the necessary information, plaintiff does

10  not describe the content or nature of her complaints, the context in which they were made, or the

11  dates, recipients, or outcomes. Curtis v. Illumination Arts, Inc., 2013 WL 6173799, at *11 (W.D.

12  Wash. Nov. 21, 2013) (rejecting president and sole shareholder's self-serving declaration that

13  commingling of funds had no impact on corporate assets where witness failed to provide any of

14  the supporting evidence within his control). The record shows that Ms. Osborne raised

15  complaints regarding her workload and her perception that Mr. Slagle did not respect her.

16  Although those complaints ultimately led to the claims of discrimination based on race or gender

17  and/or a hostile work environment that were asserted in this litigation, those claims have been

18  dismissed and do not support her remaining retaliation claim. Ms. Osborne does not specifically

19  state that she reported Mr. Slagle's romantic relationship before receiving her 2012 performance

20  evaluations. In the context of this case, it is a glaring omission, and the jury will not be asked to

21  speculate regarding facts. Merely stating that she complained of disparate treatment and

22  harassment in 2012 does not give rise to a triable issue of fact. See FTC v. Publ'g Clearing

23  House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("[A] conclusory, self-serving affidavit,

24  lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of

25  material fact."); Anheuser-Busch, Inc. v. Nat. Beverage Distributors, 69 F.3d 337, 345 (9th Cir.

26  1995) (stating that "conclusory or speculative testimony is insufficient to raise a genuine issue of

27  fact to defeat summary judgment."). "When opposing parties tell two different stories, one of

28  ORDER - 9

1    which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court
2    should not adopt that version of the facts for purposes of ruling on a motion for summary
3    judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

4    **B. Motion To Strike**

5            Under Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a
6    motion must be made on personal knowledge, set out facts that would be admissible in evidence,
7    and show that the affiant or declarant is competent to testify on the matters stated." The Court
8    cannot rely on "conclusory or speculative testimony" when deciding a summary judgment
9    motion. Anheuser-Busch, 69 F.3d at 345. The Court must also ignore hearsay for purposes of
10   summary judgment. See Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 667 (9th Cir.
11   1980).

12           Boeing objects to Marsha Morris's declaration, arguing that it contains hearsay and
13   speculation and that Ms. Morris lacks personal knowledge. Defendant also argues that the
14   declaration is improperly being admitted as expert testimony. The Court agrees. Since Ms.
15   Morris did not work with Ms. Osborne and Mr. Slagle, it is clear that any statements made about
16   Ms. Osborne and Mr. Slagle's working relationship are hearsay. Such statements were made on
17   the basis of what Ms. Osborne heard from others and recounted to Ms. Morris, not on Ms.
18   Morris' own personal experience. Moreover, Ms. Morris' statements about Mr. Slagle's rating
19   process are expert testimony that has not been properly disclosed. To the extent that the
20   testimony of Ms. Morris is inadmissible, the Court has not considered it.

21   **C. Motion for Revision Based on Newly Discovered Evidence**

22           Under Fed. R. Civ. P. 60(b)(2), a party can seek relief from a final order when there is
23   "newly discovered evidence that, with reasonable diligence, could not have been discovered in
24   time to move for a new trial under Rule 59(b)." Boeing filed its first motion to dismiss before
25   providing plaintiff with its initial disclosures or answering plaintiff's complaint. Plaintiff
26   therefore argues that Boeing's initial disclosures and answer constitute "new evidence" under
27   Fed. R. Civ. P. 60(b)(2) and requests that the Court reinstate her claims of disparate treatment,

28   ORDER - 10

hostile work environment, and other aspects of her retaliation claim.[4] Plaintiff's Rule 60(b)(2) motion is without merit. The orders issued by the Court were not final orders for purposes of that rule.

Rule 60(b)(2) requires a moving party to "show the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.'" Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir. 1990) (quoting Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., 833 F.2d 208, 211 (9th Cir. 1987)). A Fed. R. Civ. P. 60(b) motion can only be brought after a final judgment or order; interlocutory orders are insufficient to trigger a Rule 60(b) motion. See Connors v. Inquique U.S.L.L.C., 2005 WL 3007127, at *7 (W.D. Wash. Nov. 9, 2005) (stating that Rule 60(b)'s "Advisory Committee Notes clarify that the adjective 'final' applies not only to 'judgment,' but to 'order' and 'proceeding' as well."). Since no "final" order has been issued in this case, a Rule 60(b)(2) motion is improper.

But assuming that a Fed. R. Civ. P. 60(b)(2) motion is proper, plaintiff's motion would still be denied. Boeing provided plaintiff with its initial disclosure documents on March 27, 2015, and on April 30, 2015, in its order regarding defendant's first motion to dismiss, the Court allowed plaintiff to re-plead all claims (except for the common law claims that were dismissed with prejudice). Plaintiff did not file her second amended complaint until May 11, 2015. This timeline shows that Boeing's initial disclosures are not "newly discovered evidence" under Rule 60(b)(2)—plaintiff had the opportunity to address the information contained within Boeing's initial disclosure documents when she filed her second amended complaint. See Coastal Transfer

---

[4] Additional details of the relevant time-line are as follows: (1) on February 25, 2015, defendant filed its first motion to dismiss; (2) on March 10, 2015, plaintiff filed her first amended complaint; (3) on April 30, 2015, the Court dismissed all of plaintiff's claims (except her WLAD retaliation claim), but granted plaintiff leave to amend all of her other WLAD claims; (4) on May 11, 2015, plaintiff filed her second amended complaint, (5) on July 20, 2015, the Court granted defendant's second motion to dismiss, dismissing all claims (except for plaintiff's WLAD claim based on her negative performance review) with prejudice, and (6) on August 3, 2015, defendant answered plaintiff's second amended complaint.

ORDER - 11

1  Co., 833 F.2d at 212 (stating that "[e]vidence is not 'newly discovered' under the Federal Fules

2  if it was in the moving party's possession at the time of trial or could have been discovered with

3  reasonable diligence."). And other than pointing to defendant's initial disclosure documents and

4  answer in a wholly conclusory fashion, plaintiff does not clearly articulate what the "newly

5  discovered evidence" is or how any new evidence impacts the Court's earlier rulings.

6      The Court further notes that plaintiff is beyond the time frame in which she could have

7  properly brought a motion for reconsideration under LCR 7(h). A motion for reconsideration

8  "shall be filed within fourteen days after the order to which it relates is filed." LCR 7(h). The

9  Court will typically deny such motions unless there is "a showing of manifest error in the prior

10 ruling or a showing of new facts or legal authority which could not have been brought to its

11 attention earlier with reasonable diligence." Id. Here, a LCR 7(h) motion would also be denied.

12 The motion for reconsideration was filed well outside the appropriate fourteen day window and

13 plaintiff does not point to any manifest error or other new facts or legal authority that she could

14 not have provided to the Court earlier with reasonable diligence.[5]

15     Plaintiff's attempt to turn Boeing's initial disclosures into "new facts" has no basis. The

16 Court allowed plaintiff to file an amended complaint after Boeing's initial disclosures were

17 made. And to the extent that plaintiff argues that Boeing's Answer constitutes "new facts," she

18 points to no specific facts or statements in Boeing's answer to support that argument.

19                                    **IV. Conclusion**

20     Plaintiff has not established a prima facie case of retaliation under the WLAD. Viewing

21 the record in a light most favorable to plaintiff, plaintiff did not make any statutorily protected

22 complaints before receiving her 2012 year-end evaluation and corresponding IPA.

23     For all of the foregoing reasons, defendant's motion for summary judgment (Dkt. #32) is

24

25      [5] In plaintiff's reply in support of her motion for revision (Dkt. # 44) she also cites to Fed. R.

26 Civ. P. 60(d)(1), which states that Rule 60 does not prevent the Court from "entertain[ing] an
   independent action to relieve a party from a judgment, order, or proceeding." It is unclear why that

27 provision is relevant; plaintiff has not begun an "independent action."

28 ORDER - 12

1   GRANTED, defendant's motion to strike (Dkt. # 41) is GRANTED in part, and plaintiff's cross-

2   motion for revision (Dkt. # 40) is DENIED.  The Clerk of Court is directed to enter judgment for

3   defendant and against plaintiff.

4

5       Dated this 16th day of March, 2016.

6

7                                        Robert S. Lasnik
                                         United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER - 13